**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

UNITED STATES OF AMERICA

    V.

                                       CAUSE NO. 5:23-CR-00515

JACQUELINE ALVAREZ
    DEFENDANT

---

**DEFENDANT JACQUELINE ALVAREZ
SUPPLEMENTAL MOTION TO SUPPRESS ILLEGALLY SEIZED EVIDENCE**

---

**TO THE HONORABLE MARINA GARCIA MARMOLEJO, UNITED STATES DISTRICT
JUDGE FOR THE SOUTHERN DISTRICT OF TEXAS:**

The Defendant in the above styled and numbered cause, JACQUELINE ALVAREZ., under

Rule 41(f) of the Federal Rules of Criminal Procedure and the United States Constitution

respectfully moves the Court for an order suppressing any and all evidence acquired by the

Government as a result of the illegal search and seizure of the vehicle he was driving. In support of

this motion, JACQUELINE ALVAREZ would show the court as follows:

### I.   PROCEDURAL BACKGROUND

Defendant, Jacqueline Alvarez, filed a Motion to Suppress on May 19, 2023. The

Government responded as ordered by this Court on May 2, 2023. In its response, the Government

argues that there was no Fourth Amendment seizure at the time that Defendant was initially stopped

by the Border Patrol because she fled from the scene. This Honorable Court, concurring with said

argument, cancelled the initially set Suppression Hearing and indicated that unless Defendant

satisfactorily supplemented her Motion to Suppress, she was not entitled to suppression, *ab initio*.

## II.    SUPPLEMENTAL FACTUAL BACKGROUND

The report makes clear that "[t]aking into consideration all the suspicious activity being displayed from the vehicle, BPA De La Mora decided to conduct a roving patrol stop by activating the emergency equipment of his service vehicle (lights and sirens) to perform an Immigration Inspection." The agent then states that "[t]he vehicle . . . yielded near 31MM." He further reports that "[o]nce the vehicle came to a stop, four subjects quickly fled from the vehicle." "BPA De La Mora then quickly got out of his unit and proceeded to pursue the four subjects on foot."

During this time, Defendant will testify that she sat in her vehicle waiting for agents to approach her. When nothing occurred, and she saw nobody else in the area, she slowly and carefully turned her car around and began to drive away. She will say that she was unsure as to her obligation at that point so she was hyper-vigilant as she drove away. When she eventually saw another unit come behind her and turned on his lights and sirens, she AGAIN pulled over to the side of the road and again submitted to the agents' show of authority.

In its response, the Government argues that Defendant was never "seized" in this case as a result of BPA De La Mora's first stop where his lights and sirens were used to make Defendant pull over and stop on the side of the road. The Government then implies that Defendant surreptitiously kept out the fact that she "fled the scene in her vehicle" in order to perhaps mislead this Honorable Court. That fact, however, is not germane to the suppression issue here and does not impact the analysis. To the extent it is argued that it does, Defendant presents the following for consideration.

### III.    SUPPLEMENTAL ARGUMENT & AUTHORITIES

THE "SEIZURE" ANALYSIS

"A temporary, warrantless detention of an individual constitutes a seizure for Fourth Amendment purposes and must be justified by reasonable suspicion that criminal activity has taken place; otherwise, evidence obtained through such a detention may be excluded." *United States v. Wright*, 57 F.4th 524 (5th Cir. 2023)(citing *United States v. Garza*, 727 F.3d 436, 440 (5th Cir. 2013)). "The seizure must be 'justified at its inception'; therefore 'our first task is ordinarily to determine **when** the seizure occurred." *Id.* (citing *United States v. Flowers*, 6 F.4th 651, 655 (5th Cir. 2021)(*emphasis added*).

"A seizure occurs when an officer '*objectively* manifests an intent to restrain' the liberty of an individual through either use of physical force or a show of authority." *Id.* (citing *Torres v. Madrid*, 141 S.Ct. 989 (2021)(*emphasis in original*); *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968). Admittedly, however, the Fifth Circuit did clarify, as this Honorable Court correctly points out, that "there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Id.* (citing *Carroll v. Ellington*, 800 F.3d 154, 170 (5th Cir. 2015) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)).

Therefore, the analysis when a claimed seizure lacks physical force, is two-stepped. The Fifth Circuit held that the Court must look at the following:

1.    Whether the officer exerted a sufficient show of authority; and

2.    Whether defendant submitted to it.

### *Sufficient Show of Authority*

In determining whether an officer makes a sufficient show of authority, the court considers whether, in light of "all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544 (1980). In *United States v. Morris*, 40 F.4th 323, 327-28 (5th Cir. 2022), the Fifth Circuit recently explained that "[a]n officer's visual signal for a motorist to stop – whether made by hand or lights and sirens – is such a show of authority." See also *Malina v. Gonzalez*, 994 F.2d 1121, 1126 (5th Cir. 1993) (holding stopping individual "on the interstate by flashing a red light, . . . is a show of authority.").

In this case, BPA De La Mora specifically reports that he "decided to stop Defendant's vehicle by activating his lights and siren."

### *Submission to Show of Authority*

Determining the time at which an individual submits to authority "depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." *Brendlin*, 551 U.S. at 262. It is "undisputed that compliance with an officer's commands constitutes submission to authority. E.g., *United States v. Darrell*, 945 F.3d 929, 933 (5th Cir. 2019). The question here is whether Defendant, Jacqueline Alvarez, attempted to flee or terminate the encounter when BPA De La Mora turned on his overhead lights and siren. As soon as those lights went on, Defendant pulled over and stopped the vehicle. She did not attempt to flee or terminate the encounter. It was at that point in time that, once the Defendant submitted to the agent's authority, the contraband, *i.e.* the undocumented aliens, exited the vehicle and made a run for it. That BPA De La

Mora decided to run after the aliens and leave Defendant sitting there without instructions does not add or subtract from the legality of that stop and the evidence the illegal stop produced.

It is understandable that a seizure cannot occur during the course of a police chase because, in that instance, the show of authority did not **produce** [the individual's] stop. See *California v. Hodari*, 499 U.S. 621 (1991). In this case, the lights and siren did in fact produce Defendant's stop. That stop yielded the discovery of the aliens.

In the following two cases the Fifth Circuit applies the "seizure" analysis and concept of "attenuation." In *Wright*, the Court found no attenuation and therefore the "seizure" occurred immediately at the time the officer pulled up behind the defendant and lit him up, lights and siren. In the *Nooks* case and the *Puluc-Garcia* case, both cited in the *Wright* opinion, the Fifth Circuit had found that the subsequent flight had indeed attenuated the taint of the illegal initial seizure. Here are the juxtaposed factual scenarios to illustrate the difference.

## THE FIFTH CIRCUIT IN *UNITED STATES V. WRIGHT*

The Fifth Circuit Court in *Wright* dealt with a situation where the officer responded to a "suspicious vehicle" report in the area. The officer, believing she had spotted the vehicle executed a three-point-turn, pulled in behind the vehicle, and engaged her patrol vehicle's red and blue emergency lights. As the vehicle pulled over, she ordered the driver to remain in the vehicle three times – driver nevertheless exited his vehicle. After several other verbal commands, the driver continued to disobey. The officer then conducted a pat-down of the driver and attempted to move him next to her patrol vehicle, but he refused. More commands ensued – "walk toward the patrol vehicle" – disregarded; "put keys on the vehicle" – disregarded; "put your hands behind your back"

– disregarded. Instead, the driver argued and yelled at the officer while signaling to the passenger to lock the vehicle and put something in his mouth. Finally, at that point, the officer handcuffed the driver and testified that she "arrested" him for "resisting detention." A subsequent search of the vehicle yielded a pistol and drugs.

Wright moved to suppress the firearm as evidence derived from an investigatory stop and seizure effected without reasonable suspicion, in violation of the Fourth Amendment. The Government responded by asserting that "based on the totality of the circumstances, including the information in the tip, the observance of activity consistent with that information, the defendant's nervous reaction to the police, his unusual behavior, and his attempt to walk away, reasonable suspicion existed to justify a *Terry* stop."

The District Court denied the motion to suppress, concluding instead that "it did not 'think *Terry* was implicated [when the Officer pulled up behind the vehicle]'; rather, the court '[thought] *Terry* was implicated afterwards based on the conduct which was further . . . spoken to by the officer [at the hearing]', including the 'chain of events that happened afterwards.'"

ATTENUATION DOCTRINE

On appeal, the Fifth Circuit, disagreed with the district court and held unequivocally that Wright had been "seized," for Fourth Amendment purposes, when the officer pulled behind his vehicle with emergency lights engaged on her patrol vehicle. Thus, according to the Fifth Circuit's analysis, the *Terry* stop was initiated earlier than when the district court concluded. As such the analysis, according to the Fifth Circuit, obviously changes. *Wright*, 57 F.4th at 534 (citing *Morris*, 40 F.4th at 329). The Fifth Circuit applied the attenuation doctrine previously expounded in *United*

*States v. Puluc-Garcia*, 447 Fed.Appx. 567 (5ᵗʰ Cir. 2011), and in *United States v. Nooks*, 446 F.2d 1283 (5ᵗʰ Cir. 1971). In both of these precedents the Fifth Circuit applied the principle that "[i]ndependent probable cause that develops after an illegal arrest is a critical factor attenuating the taint of the initial illegal arrest." *Puluc-Garcia*, 447 Fed.Appx. at 570. In other words, "[w]hile the exclusionary rule bars evidence and testimony that is 'tainted', such evidence is admissible in circumstances where the relationship between the police's illegal conduct and the discovery of the challenged evidence is 'so attenuated as to dissipate the taint.'" *Nardone v. United States*, 308 U.S. 338 (1939). "So even if the initial stop of a defendant is invalid for violating his Fourth Amendment rights, a defendant's resistance will provide an independent ground for his arrest, and the evidence discovered in subsequent searches of his person and automobile is admissible." *Nooks*, 446 F.2d 1283.

Applying this analysis, the *Wright* Court held that there had in fact been a "sufficient show of authority" and that Wright had in fact "submitted to that authority." It remanded and ordered the district court to issue findings of fact and conclusions of law on whether reasonable suspicion existed when the officer pulled behind Wright and lit him up, lights and siren.

## THE FIFTH CIRCUIT IN *UNITED STATES v. NOOKS*

In *Nooks*, the Fifth Circuit dealt with a factual scenario in which, after the defendant had been stopped but before the search of his vehicle, the defendant shot at the police officer and also fled the scene. The Fifth Circuit stated:

> "Before the trunk of the automobile was opened it had become academic whether [the defendant's] original arrest was lawful or not. [The defendant's] description and *his precipitate flight had furnished additional evidence to show probable cause for his arrest and for the search of the automobile*. Further,

[the defendant] had committed another crime by shooting directly at [the officer] . . . Under the circumstances known at the time of the actual search of the automobile, there can be no doubt as to the validity of that search. *The nexus between that search and Brown's original arrest had been attenuated.* The fruits of that search cannot realistically be treated as fruits of [the defendant's] original arrest."

*Id*. at 1288 (*emphasis added*).

The *Nooks* Fifth Circuit therefore applied the attenuation doctrine as follows: "even if the Border Patrol Agents did not have reasonable suspicion to stop the defendant's vehicle . . . the defendant's subsequent flight and illegal conduct in the form of nearly running over two Border Patrol Agents and committing numerous traffic violations during their attempted escape, broke the causal link with any illegality arising from the initial traffic stop."

**THIS CASE**

In this case, Defendant was seized when in response to BPA De La Mora's lights and siren, she pulled over to the side of the road and stopped the vehicle. This seizure put BPA De La Mora in a position to observe the contraband leave Defendant's vehicle in an effort to flee from the agent. Defendant did not flee or, in any other way, resist BPA De La Mora's show of authority – she merely submitted to it. Even if after sitting there waiting for instructions or apprehension and receiving none, she decided to depart, that "flight" did not yield any subsequent search or seizure that would affect the taint of the initial stop. This "flight," if it can be considered flight at all, did not lead to the discovery of the evidence – such was the result of the initial seizure.

Hence, the final part of the analysis – whether the requisite reasonable suspicion existed to justify the seizure at the time BPA De La Mora pulled up behind Defendant's automobile and turned on the lights and siren.

**THE REASONABLE SUSPICION ANALYSIS**

Defendant asserts that the stop was without probable cause in violation of her 4th Amendment right to be free from unreasonable search and seizure. Particularly, the articulable facts that have been candidly admitted and listed by the reporting agent do not satisfy the *Brignoni-Ponce* standard for roving patrol stops. Thus this traffic stop was no more than a fishing expedition and anything that occurred after BPA De La Mora initiated the traffic stop by "activating his lights and siren" must be suppressed pursuant to the United States Constitution and the relevant caselaw.

**THE *BRIGNONI-PONCE* REASONABLE SUSPICION ANALYSIS**

In *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975), the Supreme Court outlined several factors to be considered when determining if reasonable suspicion exists. The *Brignoni-Ponce* factors include:

> (1)the area's proximity to the border; (2) characteristics of the area; (3) usual traffic patterns, (4) the agents' experience in detecting illegal activity; (5) behavior of the driver; (6) particular aspects or characteristics of the vehicle; (7) information about recent illegal trafficking of aliens or narcotics in the area; and (8) the number of passengers and their appearance and behavior. *United States v. Cervantes*, 797 F.3d 326, 329 (5th Cir. 2015) (quoting *United States v. Soto*, 649 F.3d 406, 409 (5th Cir. 2011)).

"No single factor is determinative; the totality of the particular circumstances known to the agents are examined when evaluating the reasonableness of a roving border patrol stop. *United States v. Hernandez*, 477 F.3d 210, 213 (5th Cir. 2007). The primary elements "of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer amount to reasonable suspicion or to probable cause. *United*

*States v. Freeman*, 914 F.3d at 342 (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

In *Freeman*, 914 F.3d at 343 *et.seq*., the Fifth Circuit analyzed an analogous factual scenario and laid out the analysis as follows:

### Proximity to the Border

Acknowledging that "one of the vital elements in the *Brignoni-Ponce* reasonable suspicion test is whether the agents had reason to believe that the vehicle in question recently crossed the border." The *Freeman* Court, acknowledging that in that particular case the "proximity element" was in fact satisfied, it clarified that "this fact alone cannot support reasonable suspicion, "otherwise, law enforcement agents would be free to stop any vehicle on virtually any road near the Texas-Mexico border." *Id*.

Here, the fact that a vehicle is traveling on the access road that is open to the public and accessible without hindrance would be subject to the same analysis. This factor weighs in favor of suppression.

### Usual Traffic Patterns, Recent Illegal Activity, and Passengers

In *Freeman*, the Fifth Circuit noted that there was no recent information about illegal trafficking in the area but more importantly, the agents in that case, as in this one, "did not see any passengers in the [vehicle] prior to stopping it." As such, the *Freeman* Court weighed this factor in favor of suppression.

### Driver's Behavior

In *Freeman*, the Fifth Circuit weighed a statement made in the agent's report which indicated that the driver was "speeding." The agent had not utilized any sort of speed analysis device and

therefore relied on the fact that he had seen the vehicle "kick up dust clouds" while traveling. The Court noted that the testimony had clarified that the road was under construction and therefore, viewing the facts in the light most favorable to the defendant, it found that the defendant had not in fact been speeding.

In this case the agents point to NOTHING that would indicate Ms. Alvarez's driving was the basis for the stop. In fact, the only thing that BPA De La Mora points to is the standard language used in virtually all roving stop reports – that the vehicle was riding low as if to be carrying a heavy load in the back. There was a total of three (3) individuals riding in the vehicle with Defendant and their positions are unknown. Perhaps all three were in the back seat or perhaps two were in the back and one in the front passenger seat. In either case, it is unlikely this "normal" weight would have caused any "riding low" of any vehicle. This is the type of weight the vehicle is designed to carry without incident.

Thus, it would not be reasonable for this Honorable Court to disbelieve the report and discard the allegation that the vehicle was "riding low." This factor should weigh in favor of suppression.

**Characteristics of the Area**

In *Freeman*, the Fifth Circuit acknowledged the characteristics of the area weighed in favor of reasonable suspicion noting that it was "undisputed that [the area] is a known smuggling route." Nevertheless, the *Freeman* Court also considered that "[i]t is well established that a road's reputation as a smuggling route *adds* to the reasonableness of the agents' suspicion. *United States v. Aldaco*, 168 F.3d 148, 151-52 (5th Cir 1999). The *Freeman* Court also cited *Rangel-Portillo*, 586 F.3d at 380 (5th Cir. 2009), in which the Fifth Circuit made clear that "[a]bsent some other contributing factor,

merely driving in an area 'notorious for alien smuggling,' along, does not constitute reasonable suspicion." (*emphasis added*)

### Particular Aspects of the Vehicle

As mentioned above, the only fact the reporting agent points to with regard to the particular aspects of the vehicle is that it was "riding low." Based on the facts of this case alone – that there were only a total of four (4) occupants in the vehicle, this allegation is not credible. It is more credible that, having acted upon a hunch, and nothing else, the agent, in retrospect, had to point to something more objectively based in order to justify his "roving stop."

The only other "particular aspect" of the vehicle mentioned in the report is that it was registered to an owner out of Houston, Texas – a "known area in which smuggling organizations recruit." This, on its own, is not sufficient. This factor weighs in favor of suppression.

### Agent's Experience

This is the only factor that Defendant cannot argue either way since BPA De La Mora's resume and employment records have not been produced in discovery. However, having seen how all of the foregoing factors weigh in favor of suppression and a lack of reasonable suspicion for the seizure, it should be noted that based on his own reported admissions, BPA De La Mora did have sufficient reasonable suspicion to conduct his "roving patrol" traffic stop. It would be irrelevant to consider, even if BPA De La Mora has conducted thousands of stops and/or arrests in the area, the agents' experience – it bears little weight in the analysis.

### Examining the Factors as a "Laminated Total"

After all of the forgoing factors are considered, this Honorable Court is left with the

following articulable facts: (1) Defendant's vehicle was registered to a Houston, Texas, owner; (2) it was traveling on an access road that is open to the public and commonly utilized by the traveling public; (3) there was nothing erratic or suspicious about Defendant's driving; (4) there were a total of four (4) occupants inside the vehicle making it improbable that it was "riding low" as reported by the agent; and (5) the route is one that the agents will probably be characterize as a commonly known "smuggling route." As the Fifth Circuit has clearly held, a commonly known "smuggling route," in an of itself is not sufficient to supply reasonable suspicion for a roving patrol stop. Without more, the traffic stop in this case is unsupported by reasonable suspicion and the Court must suppress any and all evidence after BPA De La Mora initiated his lights and siren.

### IV.    REQUEST FOR HEARING & DECLARATION OF ISSUES

Defendant hereby requests this Honorable Court grant a hearing on the matter to show the Court that:

(1)    Defendant's "seizure" for Fourth Amendment purposes occurred at the time BPA De La Mora lit his overhead lights and siren, causing Defendant to stop and submit to his authority.

(2)    The *Brignoni-Ponce* factors have not been satisfied.

(3)    The "roving patrol" stop is therefore unsupported by reasonable suspicion.

(4)    Any and all evidence collected, observed, or otherwise seized after BPA De La Mora activated his lights and siren must be suppressed.

### V.    CERTIFICATE OF CONFERENCE

On June 2, 2023, undersigned counsel attempted to confer with AUSA Michael Makens

about this motion by email but did not receive a response. Counsel presumes he is opposed.

## VI.    PRAYER.

JACQUELINE ALVAREZ prays that the Court enter an order granting this Motion to Suppress and that all evidence be ordered excluded along with any and all statements made by her, taken in violation of her constitutional rights. Defendant hereby requests an evidentiary hearing.

Respectfully Submitted,

LAW OFFICES OF SILVERIO MARTINEZ, P.C.

 /S/ SILVERIO MARTINEZ
Silverio Martinez
Texas State Bar Number:  24037040
1414 Victoria St.
Laredo, Tx. 78040
Telephone: (956) 724-5047
Fax: (956) 284-0371
smartinez@smlawfirm.net

*ATTORNEY FOR THE DEFENDANT, JACQUELINE ALVAREZ*

## CERTIFICATE OF CONFERENCE

I certify that on the  3rd day of June, 2023, undersigned counsel conferred with AUSA, Michael Makens, regarding Defendant JACQUELINE ALVAREZ's Supplemental Motion to Suppress and he is **opposed**.

/S/ SILVERIO MARTINEZ
Silverio Martinez

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the Defendant JACQUELINE ALVAREZ's Supplemental Motion to Suppress was emailed to Michael Makens, Assistant United States Attorney on the 3rd day of June, 2023.

/S/ SILVERIO MARTINEZ
Silverio Martinez