UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 5:23-CR-515 |
| | § | |
| JACQUELINE ALVAREZ | § | |

# MEMORANDUM OPINION AND ORDER

Defendant Jacqueline Alvarez has moved to suppress evidence obtained from a roving patrol stop (Dkt. Nos. 25, 31, 34). For the reasons below, her motion is **DENIED**.

## I.   BACKGROUND

### A. Factual Allegations

Accepting Alvarez's allegations as true, her filings establish the following narrative: On April 16, 2023, the United States Border Patrol operated an immigration checkpoint near mile marker 29 on IH-35 (Dkt. No. 25 at 2).[1] That day, Alvarez drove southbound on IH-35's east access road—away from the checkpoint (*id.* at 2, 8). At mile marker 27, Alvarez used an underpass to access the west access road and travel northbound (*id.*). Although this corridor is a known smuggling route that circumvents the checkpoint, Alvarez notes this path is "a common route taken by vehicles seeking to avoid traffic at the checkpoint, entering properties along that route, and other ostensibly innocuous reasons" (*id.* at 2 & n.1, 8).

Alvarez did not drive erratically or suspiciously (*id.* at 8). She also maintains

---

[1] Although Alvarez's filings do not state where the checkpoint is located, the Court takes judicial notice that it sits at mile marker 29. *See United States v. Nelson*, 990 F.3d 947, 953–54 (5th Cir. 2021); Fed. R. Evid. 201(b)(1), (c).

it was "improbable" that her vehicle was "riding low" (*id.*). Nonetheless, Border Patrol Agent Steve de la Mora followed Alvarez and activated his emergency lights and sirens (Dkt. No. 34-1 at 1). Once Alvarez pulled over and parked, three passengers "darted" from the vehicle and left a rear door open (*id.*). Agent de la Mora pursued the passengers on foot and left Alvarez alone (*id.*).

Alvarez stayed in place for approximately one minute (*id.*). Because no one else approached her, Alvarez closed the open passenger door and drove southbound to Laredo, Texas (*id.*). As she departed, she hoped Border Patrol wanted to apprehend the three passengers, not her (*id.*).

"With caution," Alvarez drove for two to three minutes before a second agent initiated another roving patrol stop (*id.* at 1–2) Alvarez pulled over, and she was arrested by the second agent (*id.* at 2).

**B. Procedural History**

Based on these events and Alvarez's incriminating post-arrest statements, the Government filed a criminal complaint (Dkt. No. 1). Seeking to suppress all evidence and statements, Alvarez filed a motion to suppress (Dkt. No. 25). Therein, Alvarez argues Agent de la Mora lacked reasonable suspicion to initiate his roving patrol stop (*id.*). In response, the Government contends Alvarez's conduct constituted flight, and there was no Fourth Amendment seizure (Dkt. No. 27). As such, the Government believes Alvarez cannot avail herself of a suppression remedy (*id.*).

Alvarez counters with the following: By parking her vehicle, waiting one minute, and driving off cautiously, she submitted to Agent de la Mora's show of authority (Dkt. No. 34). Therefore, a Fourth Amendment seizure occurred (*id.*).

## II. DISCUSSION

Suppression hearings are not granted as a matter of course. *United States v. Hankton*, 51 F.4th 578, 596 (5th Cir. 2022). An evidentiary hearing is only required if the defendant alleges "sufficient facts, which, if proven, would justify relief." *United States v. Smith*, 977 F.3d 431, 434 (5th Cir. 2020). That is, the factual allegations in a defendant's motion and affidavits "must be sufficiently definite, specific, detailed, and non-conjectural" to enable the court to conclude a substantial claim has been presented. *United States v. Guerra*, 605 F. App'x 295, 298 (5th Cir. 2015). The decision not to hold an evidentiary hearing is reviewed for abuse of discretion. *Hankton*, 51 F.4th at 596.

Here, Alvarez has not offered sufficient facts which, if proven, would justify relief. The allegations do not show Alvarez submitted to Agent de la Mora's show of authority.

A defendant's Fourth Amendment rights are only implicated where a search or seizure occurs. *United States v. Wright*, 57 F.4th 524, 530 (5th Cir. 2023). Relevant here, a Fourth Amendment seizure occurs where an officer exerts a "sufficient show of authority," and the defendant submits to it. *Id.* at 531. A fleeing defendant "is not seized until he is physically overpowered." *Brendlin v. California*, 551 U.S. 249, 262 (2007); *see also Carroll v. Ellington*, 800 F.3d 154, 170 (5th Cir. 2015) ("[T]here is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned.").

Here, activating the emergency lights and sirens constituted a "sufficient show of authority." *See Wright*, 57 F.4th at 531–32; *United States v. Morris*, 40 F.4th 323,

327 (5th Cir. 2022). Accordingly, the outstanding question is whether Alvarez "submitted" to this show of authority.

Although the Court is unaware of any in-Circuit cases with analogous facts, the Supreme Court and Fifth Circuit's guidance is instructive. In *Brendlin*, the Supreme Court noted a car passenger "may submit to authority *by not getting up to run away*." 551 U.S. at 262 (emphasis added). In *Wright*, the Fifth Circuit held a suspect who disobeyed numerous commands submitted to an officer's show of authority because, ultimately, he neither "attempt[ed] to flee, *nor terminate the encounter*." 57 F.4th at 528–29, 533 (emphasis added). There, the suspect did not heed the officer's directives to stay in his vehicle, to place his keys on top of his car, and to walk to her patrol unit. *Id.* at 528–29. After the officer commanded the suspect to place his hands behind his back, he began banging on the hood, yelled at a passenger to exit and lock the vehicle, and motioned the passenger to put an object in his mouth. *Id.* at 529. Although the suspect's actions were "improper," he ultimately "[did] not show defiance" to the officer's show of authority because "he did not attempt to flee, nor terminate the encounter." *Id.* at 532–33.

Lastly, in *Scott*, the Fifth Circuit explained, "a request that does not generate the desired order [of affairs] *cannot possibly* produce a seizure." *United States v. Scott*, No. 21-51084, 2022 WL 17261790, at *2 (5th Cir. Nov. 29, 2022) (emphasis added); *see also United States v. Silva*, 957 F.2d 157, 159 (5th Cir. 1992) ("To effect a show of authority seizure, the suspect must yield or comply with that show of authority.").

Based on her allegations, Alvarez did not submit to Agent de la Mora's authority. Alvarez waited *one minute* before she drove off (Dkt. No. 34-1 at 1).

4

Common sense and experience teach that when an agent activates his lights and sirens, the agent intends to gather as much information as is permissible to determine whether any wrongdoing occurred. *See Brendlin*, 551 U.S. at 257 ("An officer who orders one particular car to pull over acts with an implicit claim of right based on fault of some sort . . . ."). Common sense and experience also teach that if an agent pursues other suspects after initiating a stop, the agent expects the non-fleeing suspect to wait, in case the agent needs to obtain more information or in case backup agents arrive: "[A] sensible person would not expect a police officer to allow people to come and go freely from the physical focal point of an investigation . . . . [During a traffic stop, a vehicle's occupants] will reasonably feel subject to suspicion owing to close association" and "will expect to be subject to some scrutiny," such that an "attempt to leave the scene would be so obviously likely to prompt an objection from the officer." *Id*. Accordingly, when Agent de la Mora activated his emergency lights and sirens, a reasonable person would not have felt "free to ignore the police presence and go about his business." *Id*. at 261.

Granted, it is unclear how long Alvarez should have waited to demonstrate she submitted to Agent de la Mora's show of authority. Perhaps 30 minutes, an hour, or longer would have sufficed. But certainly, merely waiting one minute is inconsistent with submission. If anything, leaving after such a brief pause demonstrated opportunistic behavior.

Two hypotheticals help underscore the Court's conclusion. Suppose an agent sees a suspicious vehicle and activates his lights and sirens. The suspect-driver pulls over and throws a parcel into a river. Worried the water could destroy potentially

5

incriminating evidence or that the currents will carry the parcel away, the agent parks his patrol unit and immediately runs after the parcel. If the suspect-driver waits for one minute, "hoping" the agent wanted the parcel, but not to apprehend the suspect-driver, and then drives off, surely such conduct would constitute flight. As *Wright* instructs, obeying some, but not all, of an officer's commands does not automatically constitute submission. *See* 57 F.4th at 533. Rather, the inquiry hinges on whether the suspect *ultimately* attempted to flee or terminate the encounter. *Id.*

Another hypothetical. Suppose four individuals are walking. An officer driving his patrol unit activates his lights and sirens. The group initially stops, and the officer parks his unit. Three members of the group immediately "dart" in another direction, and the officer pursues them on foot. The remaining individual waits one minute, "hopes" the officer does not wish to apprehend him, and departs. On these facts, the remaining individual's one-minute "compliance" was ephemeral, at best. It cannot reasonably be said the individual ultimately yielded to the officer's show of authority.

With this understanding, the Court concludes Alvarez has not alleged a substantial claim for relief. When Alvarez chose to "terminate" her involvement with Agent de la Mora after one minute, she "did not generate the desired" compliance. *Wright*, 57 F.4th at 533; *Scott*, 2022 WL 17261790, at *2. Accordingly, Alvarez did not yield to Agent de la Mora's show of authority and no Fourth Amendment seizure occurred. Without this predicate showing, Alvarez cannot secure suppression as a remedy.

## III.  CONCLUSION

For the foregoing reasons, Alvarez's motion to suppress (Dkt. Nos. 25, 31, 34) is **DENIED**.

It is so **ORDERED**.

**SIGNED** June 12, 2023.

_____
Marina Garcia Marmolejo
United States District Judge